

**United States Department of Agriculture**
Food and Nutrition Service
Supplemental Nutrition Assistance Program

February 7, 2022



Mesfin Giorgis
Dearborn Market
601 Dearborn Ave
Dayton, OH 45417-3263

Dear Sir or Madam:

The United States Department of Agriculture Food and Nutrition Service (FNS) has compiled evidence that your firm has violated the Supplemental Nutrition Assistance Program (SNAP) regulations. In addition, transactions involving Pandemic EBT (P-EBT) benefits also violate P-EBT regulations at 7 CFR part 284 (see enclosure). Analysis of the records, including a review of your store's characteristics, food stock, and store pricing gathered from visit(s) to the store, reveal Electronic Benefit Transfer (EBT) transactions that establish clear and repetitive patterns of unusual, irregular, and inexplicable activity for your type of firm. The store visit report(s) and list of the transactions are enclosed. Store visit photos which correspond to the store visit report(s) are available electronically upon written request to the addressee below.

Based on this information, we are charging your firm with trafficking, as defined in Section 271.2 of the SNAP regulations. Violations of SNAP regulations which involved P-EBT benefits also violate corresponding P-EBT regulations at 7 CFR part 284. Please see the enclosure for a list of the P-EBT and SNAP regulations that correspond to each other. As provided by Section 278.6(e) (1) of the SNAP regulations, the sanction for trafficking is permanent disqualification. These transactions occurred during the months of April 2021 - September 2021.

1. In a series of EBT transactions, multiple transactions were made from the accounts of individual households within a set time period. These transactions are listed in Attachment 1.

2. In a series of EBT transactions, your store conducted EBT transactions that are large based on the observed store characteristics and recorded food stock. These transactions are listed in Attachment 2.

If it is determined that your firm committed the trafficking violations noted above, it will be permanently disqualified from the Supplemental Nutrition Assistance Program as provided by SNAP regulations, Section 278.6(e)(1). Civil or criminal action may also be taken against you by the United States Attorney. In addition, a fiscal claim may be assessed to recover the monetary losses to the Federal Government resulting from trafficking violations.

The SNAP regulations also provide that, under certain conditions, FNS may impose a civil money penalty (CMP) of up to $59,000.00 in lieu of permanent disqualification of a firm for trafficking. The SNAP regulations, Section 278.6(i), list the criteria that you must meet in order to be considered for a CMP. If you request a CMP, you must meet each of the four criteria listed and provide the documentation as specified within 10 calendar days of your receipt of this letter. No extension of time can be granted for making a request for a CMP or for providing the required documentation.

Your request and all documentation must be postmarked by midnight of the 10th calendar day after you receive this letter, in order to be considered timely. If the 10th calendar day falls on a Saturday, Sunday or legal (Federal) holiday, a request with documentation, will be timely if it is postmarked the next day which is not a Saturday, Sunday or legal (Federal) holiday. If your request and the required documentation are not submitted on time, you will lose your right for any further consideration for a CMP. If it is determined that you qualify for a CMP, the amount of that penalty will be $59,000.00. Payment in full is due within 30 calendar days after you receive our determination letter. The amount of the CMP was calculated in accordance with SNAP regulations at Section 278.6(j).

If you do not request consideration for a CMP or are determined to be ineligible for a CMP, the permanent disqualification of your firm shall be effective on the date of receipt of the letter informing you of our final decision (SNAP regulations, Section 278.6(c)). If the permanent disqualification of your firm is later reversed through administrative or judicial review, USDA shall not be liable for the value of any sales lost during the period of disqualification you served.

If you are an authorized vendor under the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC), you may be disqualified from the WIC Program as a result of your disqualification from SNAP. In accordance with current law governing both the SNAP and the WIC Program, such a WIC Program disqualification is not subject to administrative or judicial review under the WIC Program. A CMP from the Supplemental Nutrition Assistance Program may also result in a WIC Program disqualification, but such a disqualification would be subject to administrative and/or judicial review.

In the event that you sell or transfer ownership of your store subsequent to your disqualification, you will be subject to and liable for a CMP as provided by SNAP regulations, Sections 278.6(f) (2),(3) and (4). The amount of this sale or transfer CMP will be calculated based on SNAP regulations, Section 278.6(g).

We may disclose information to the public when a retailer has been disqualified or otherwise sanctioned for violations after the time for any appeals has expired. This information is limited to the name and address of the store, the owner(s)/officer(s) names and information about the sanction itself.

SNAP regulations Section 278.6(b) explain your right to reply to the charges, and Sections 278.6(c) through (m) describes the procedures we will follow in making a decision in this case. If you wish to present any information, explanation, or evidence you have regarding these charges, you must reply within 10 calendar days of the date you receive this letter.

You may reply either by phone or in writing. You may have legal counsel assist you in presenting your reply. If you will be represented by a third party, you must provide a Letter of Representation, signed by the owner, authorizing FNS to communicate with the representative. To respond by phone, please make an appointment for this purpose by telephoning Albedean Nash at (703) 217-0317. If you schedule but fail to keep an appointment, we will consider that action as a non-response to this letter.

Submit any written response to:

Attn: Albedean Nash
USDA, Food and Nutrition Service

Phone: (703) 217-0317
EFax: (844) 767-7622

Email: Albedean.Nash@usda.gov

We will fully consider your reply and any documentation you provide before we make a final decision in this matter. However, if we do not hear from you within 10 calendar days of receipt of this letter, we will make a decision based on the information available to us, and advise you of that decision in writing.

Any documentation submitted becomes the property of FNS and will not be returned.

Current SNAP and P-EBT regulations are available online, at https://www.fns.usda.gov/snap/retailer/training.

Sincerely,

*Gilda Torres*

Gilda Torres
Section Chief, Retailer Operations Division
USDA, Food and Nutrition Service
Supplemental Nutrition Assistance Program

Enclosure

# GARY C. SCHAENGOLD
## ATTORNEY AT LAW
4 EAST SCHANTZ AVENUE
DAYTON, OHIO 45409
(937) 299-9940
FAX: (937) 293-9372
EMAIL: gschaengold.law@sbcglobal.net



February 16, 2022

VIA EMAIL AND CERTIFIED MAIL

Attn: Albedean Nash
USDA, Food and Nutrition Service

    Re: Dearborn Market (SNAP account #0734877)

Dear Mr. or Ms. Nash:

    My office has been retained by Mesfin Giorgis in his capacity as President of NDA Market, Inc., dba Dearborn Market, having its principal place of business located at 601 Dearborn Avenue, Dayton, Ohio 45417.

    This letter is being provided in response to a letter dated February 7, 2022 from Gilda Torres, Section Chief, Retailer Operations Division, USDA Food and Nutrition Service, Supplemental Nutrition Assistance Program, relating to my client's SNAP account #0734877.

    This letter shall first constitute a Letter of Representation, signed by my client on behalf of the owner entity, authorizing FNS to communicate with my office.

    In her letter, Ms. Torres states that FNS has compiled evidence of my client's business violating SNAP regulations. While my client agrees that some of the identified transactions are unusual, my client disagrees that any of the transactions constitutes trafficking or other violation of SNAP regulations.

    By way of background, Mr. Giorgis has operated this small grocery since October, 2020 and owned the MZ, Inc., dba Franklin Market, in Washington, D.C. from 2001-2009 as a SNAP retailer without incident.

    Your attachment 1 lists certain transactions of an individual household on the same or next day. My client has reviewed the cash register tapes for each of your listed transactions and found that almost everything matches, copies of which are attached. The dates match, but our machine does not note exact times.

    From my client's perspective, all of your Attachment 1 transactions are legitimate sales. For each listed transaction, the customer presented the SNAP debit card and provided the proper

Attn: Albedean Nash
USDA, Food and Nutrition Service
February 16, 2022
Page 2

PIN number. My client is not required to check ID and would have no way of knowing if the same or different individual is presenting and using the same card minutes or hours later in time. Store video only goes back a few months at best and we do not have video from the relevant time frame of April - September, 2021.

It is not unusual for the same customer to purchase certain items and forget certain other items they need. The customer then has a second transaction rung up minutes later. As an example, enclosed are two (2) receipts from February 12, 2022 which reflect such a scenario.

About eighty percent (80%) of the customers at this store use SNAP benefits. There are 170 Section 8 housing apartments in a single complex near the store plus numerous other residents in the immediate neighborhood which use SNAP benefits. While most people use their benefits in accordance with applicable rules and regulations, some people are unfortunately unscrupulous and cheat the system. My client surmises that a handful of his customers fit the latter category and, after making a purchase, are handing their cards and providing their PIN numbers to ineligible third parties, something which is impossible for a merchant to know or police.

Your Attachment 2 is comprised of about 500 flagged transactions over a span of several months ranging in amounts from $36.00 to $213.20. My client is unable to identify the exact items associated with any of the listed transactions since his cash register system only identifies merchandise as non-taxable (Dept. 16) and taxable (Dept. 01) items. See attached examples.

My client disagrees with your suggestion that his inventory is not sufficient to account for the flagged transactions.

First, I understand that a FNS representative came to the store on April 15, 2021 and took pictures, copies of which my client and I are hereby requesting. Taking pictures on a single date does not provide an accurate showing of product on an average ongoing basis because merchandise is restocked as needed every day. Enclosed are photos of current store inventory taken on February 13, 2022.

My client purchases some items from wholesalers, but also purchases items at retail from Sam's Club, Kroger, Walmart, Meijer, and Dollar Tree due to wholesaler minimums. Receipts for most of the purchases from April - September, 2021 are also attached.

Second, it is not unusual for customers to make larger purchases. As an example, enclosed is a photo from August 24, 2021 which depicts the customer loaded down with bags of merchandise, and the receipt for that SNAP transaction. The picture was taken because it was unusual for a customer to carry items on top of their head.

Attn: Albedean Nash
USDA, Food and Nutrition Service
February 16, 2022
Page 3

This written response and denial is being provided by email since your letter states for any written response to be emailed and also refers to a postmark deadline.

In summary, my client denies having engaged in any trafficking of SNAP benefits and should not be disqualified as a SNAP retailer. This merchant is a longtime participant in SNAP and follows the rules and regulations. In fact, he invites FNS to install its own hidden cameras and will otherwise cooperate in the prosecution of any individual patronizing this store to improperly use their SNAP benefits.

Thank you for your time and consideration in this matter.

Very truly yours,

Gary C. Schaengold

Mesfin Giorgis, President
NDA Market, Inc., dba Dearborn Market

GCS/sej
encl.
cc: Client



**United States Department of Agriculture**
Food and Nutrition Service
Supplemental Nutrition Assistance Program

June 24, 2022



EXHIBIT C

Gary Schaengold, Attorney
4 East Schantz Avenue
Dayton, OH 45409

RE: Dearborn Market
601 Dearborn Ave
Dayton, OH 45417-3263

Dear Sir or Madam:

Consideration has been given to the information and evidence available to us relating to our letter of charges dated February 07, 2022, and to your reply of February 16, 2022. We find that the violations cited in our charge letter occurred at your firm.

We considered your eligibility for a trafficking Civil Money Penalty (CMP) according to the terms of Section 278.6(i) of the Supplemental Nutrition Assistance Program (SNAP) regulations. We have determined that you are not eligible for the CMP because you failed to submit sufficient evidence to demonstrate that your firm had established and implemented an effective compliance policy and program to prevent violations of the Supplemental Nutrition Assistance Program.

Therefore, your firm shall be permanently disqualified from the Supplemental Nutrition Assistance Program, effective upon receipt of this letter. This is in accordance with Section 278.6(c) and 278.6(e)(1) of the SNAP regulations. Violations of SNAP regulations which involved P-EBT benefits also violate corresponding P-EBT regulations at 7 CFR part 284. Please see the enclosure for a list of the P-EBT and SNAP regulations that correspond to each other.

If you continue to accept EBT benefits after receipt of this notice, you may be subject to additional fines and penalties.

This determination will be final unless you submit a written request for review to the Chief, Administrative Review Branch, USDA, FNS, 1320 Braddock Place, 5th Floor, Alexandria, Virginia 22314 or by email to SM.FN.SNAP-ARB@usda.gov. This request must include the FNS number assigned to your store and a phone number and email address for you to facilitate communications regarding the status of your review. Your request for review must be received by email or postmarked by midnight of the 10th calendar day after you receive this letter in order to be considered timely. If you are responding by mail and the 10th calendar day of the period for requesting review falls on a Saturday, Sunday or legal (Federal) holiday, as specified in Section 279.2(c) of the SNAP regulations, a request for review will be timely if it is postmarked the next day which is not a Saturday, Sunday or legal (Federal) holiday. The rules governing your review rights are contained in Section 278.6(n) and Part 279 of the SNAP regulations. If someone (attorney, accountant, etc.) will be representing you in the review process, a written statement signed by you naming this individual as your representative should be included with your request along with a phone number and email address for them. Failure to include this signed statement will delay processing your request.

During this review process, you may not accept EBT benefits until a decision is rendered. If the permanent disqualification of your firm is later reversed through administrative or judicial review, USDA shall not be liable for the value of any sales lost during the period of disqualification you served (SNAP regulations Section 278.6(c)).

This determination shall not preclude the Department of Agriculture or any other agency or department of the United States from taking further action to collect any claim determined under the SNAP regulations or under any other pertinent statutes or regulations, nor shall this determination preclude prosecution under any applicable laws.

Your Electronic Benefit Transfer (EBT) processor will be advised to disable your EBT connection. If your EBT machine is government-supplied, it must be returned to the processor. If you accept EBT benefits after the effective date of disqualification, you will be subject to a monetary fine per Section 278.6(m) of the SNAP regulations and possible prosecution under applicable laws.

If you are an authorized vendor under the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC), you may be disqualified from the WIC Program as a result of your disqualification from the SNAP. In accordance with current law governing both the SNAP and the WIC Program, such a WIC Program disqualification is not subject to administrative or judicial review under the WIC Program. A CMP from the Supplemental Nutrition Assistance Program may also result in a WIC Program disqualification, but such a disqualification would be subject to administrative and/or judicial review.

In the event that you sell or transfer ownership of your store subsequent to your disqualification, you will be subject to and liable for a CMP as provided by SNAP regulations Sections 278.6(f)(2), (3), and (4). The amount of this sale or transfer CMP will be calculated based on SNAP regulations at 278.6(g).

We may disclose information to the public when a retailer has been disqualified or otherwise sanctioned for violations after the time for any appeals has expired. This information is limited to the name and address of the store, the owner(s)/officer(s) names and information about the sanction itself.

Current SNAP and P-EBT regulations are available online, at https://www.fns.usda.gov/snap/retailer/training.

If you have questions, please call Albedean Nash at (703) 217-0317.

Sincerely,

Christine Storley
Section Chief, Retailer Operations Division
USDA, Food and Nutrition Service
Supplemental Nutrition Assistance Program

# GARY C. SCHAENGOLD
## ATTORNEY AT LAW
4 EAST SCHANTZ AVENUE
DAYTON, OHIO 45409
(937) 299-9940
FAX: (937) 293-9372
EMAIL: gschaengold.law@sbcglobal.net



June 29, 2022

VIA OVERNIGHT DELIVERY (USPS)

Chief
Administrative Review Branch
USDA
FNS
1320 Braddock Place
5th Floor
Alexandria, Virginia 22314

    Re: Dearborn Market (SNAP account #0734877)

Dear Chief:

    My office has been retained by Mesfin Giorgis in his capacity as President of NDA Market, Inc., dba Dearborn Market, having its principal place of business located at 601 Dearborn Avenue, Dayton, Ohio 45417.

    This letter constitutes my client's written request for review of a letter dated June 24, 2022 from Christine Storley, Section Chief, Retailer Operations Division, USDA, Food and Nutrition Service, Supplemental Nutrition Assistance Program, finding that violations cited in a previous charge letter had occurred. My client has been advised in said letter that the firm is permanently disqualified from SNAP.

    This letter shall also constitute a Letter of Representation, signed by my client on behalf of the owner entity, authorizing you to communicate with my office.

    The letter from Ms. Storley provides no explanation of facts supporting such a conclusion. In my previous letter of February 16, 2022, I explained with substantial supporting documentation that my client disagrees that any of the questioned transactions constituted trafficking or other violation of SNAP regulations.

    As previously mentioned, Mr. Giorgis has operated this small grocery since October, 2020 and owned the MZ, Inc., dba Franklin Market, in Washington, D.C. from 2001-2009 as a SNAP retailer without incident.

Chief, Administrative Review Branch
June 29, 2022
Page 2

  The charge letter listed certain transactions of an individual household on the same or next day. My client reviewed the cash register tapes for each of the listed transactions and found that almost everything matched, copies of which were provided. The dates matched, but my client's machine does not note exact times.

  From my client's perspective, all of the Attachment 1 transactions were legitimate sales. For each listed transaction, the customer presented the SNAP debit card and provided the proper PIN number. My client is not required to check ID and would have no way of knowing if the same or different individual is presenting and using the same card minutes or hours later in time. Store video only goes back a few months at best and we did not have video from the relevant time frame of April - September, 2021.

  It is not unusual for the same customer to purchase certain items and forget certain other items they need. The customer then has a second transaction rung up minutes later. As an example, my client provided two (2) receipts from February 12, 2022 which reflect such a scenario.

  About eighty percent (80%) of the customers at this store use SNAP benefits. There are 170 Section 8 housing apartments in a single complex near the store plus numerous other residents in the immediate neighborhood which use SNAP benefits. While most people use their benefits in accordance with applicable rules and regulations, some people are unfortunately unscrupulous and cheat the system. My client surmises that a handful of his customers fit the latter category and, after making a purchase, are handing their cards and providing their PIN numbers to ineligible third parties, something which is impossible for a merchant to know or police.

  Your Attachment 2 was comprised of about 500 flagged transactions over a span of several months ranging in amounts from $36.00 to $213.20. My client was unable to identify the exact items associated with any of the listed transactions since his cash register system only identifies merchandise as non-taxable (Dept. 16) and taxable (Dept. 01) items. Examples were provided with my last letter.

  My client remains in disagreement with any suggestion that his inventory is not sufficient to account for the flagged transactions.

  Your taking pictures on a single date does not provide an accurate showing of product on an average ongoing basis because merchandise is restocked as needed every day. I previously provided photos of store inventory taken on February 13, 2022.

  My client purchases some items from wholesalers, but also purchases items at retail from Sam's Club, Kroger, Walmart, Meijer, and Dollar Tree due to wholesaler minimums. Receipts for most of the purchases from April - September, 2021 were also provided.

  It is not unusual for customers to make larger purchases. As an example, I previously

Chief, Administrative Review Branch
June 29, 2022
Page 3

provided a photo from August 24, 2021 which depicted a customer loaded down with bags of merchandise, and the receipt for that SNAP transaction.

      In summary, my client maintains that he has not engaged in any trafficking of SNAP benefits and should not be disqualified as a SNAP retailer. This merchant is a longtime participant in SNAP and follows the rules and regulations. In fact, he still invites FNS to install its own hidden cameras and he will otherwise cooperate in the prosecution of any individual patronizing this store to improperly use their SNAP benefits.

      Thank you for your time and consideration in this matter.

      Very truly yours,

      Gary C. Schaengold

      Mesfin Giorgis, President
      NDA Market, Inc., dba Dearborn Market

GCS/sej
cc: Client



**United States Department of Agriculture**

Food and Nutrition Service

Retailer and Issuance Policy and Innovation Division

Administrative and Judicial Review Branch

1320 Braddock Place, Room 5042 Alexandria, VA 22314

Phone: (510) 542-4142

rich.proulx @usda.gov

July 24, 2023

Gary Schaengold, Attorney
4 East Schantz Avenue
Dayton, OH 45409

RE:     Mesfin Giorgis
          Dearborn Market
          601 Dearborn Ave.
          Dayton, OH 45417-3263



EXHIBIT E

Dear Counselor:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture, Food and Nutrition Service in response to your June 29, 2022 request for administrative review. Also included is a statement regarding applicable rights to a judicial review.

The U.S. Department of Agriculture, Food and Nutrition Service finds that there is sufficient evidence to support the determination by the Office of Retailer Operations and Compliance to impose a permanent disqualification against Dearborn Market from participating as an authorized retailer in the Supplemental Nutrition Assistance Program.

Sincerely,



RICH PROULX
Administrative Review Officer

Enclosure: Final Agency Decision